Taul v. Bradford.

ANDREW J. TAUL v. WILLIAM BRADFORD.

As a general rule it may be sound law, that a covenant on the part of the vendee to pay the purchase money at a particular date, and of the vendor to convey at some indefinite period, as, for instance, after a patent is obtained from the Government, are not dependent upon each other, and that the purchaser must pay the money when due, and rely upon the covenant of the agreement for his remedy.

But this rule does not hold where the vendor's covenant is to convey within a reasonable time and without any unnecessary delay after obtaining a patent from the State, and it is shown that the land has been patented to another who is not a party to the suit, and the validity of whose patent is therefore presumed.

The vendee in an executory contract may set up the defects of title as a defence against the recovery of the purchase money, and is not bound to allege his ignorance of these defects at the time of the sale. It is for the plaintiff to reply and prove knowledge of the condition of the title by the defendant.

Appeal from Ellis. Tried below before E. H. Tarrant, Esq., appointed by the parties.

The survey of Woodward was made on the 5th of January, 1847; the date of the entry was not shown; the date of his patent was June 9th, 1854. Bradford settled on the section sold to Taul, as a colonist of Peters' colony, in 1846, and remained

there until March, 1855. That part of the colony was not sectionized until after the survey of the Woodward certificate, which was a 320 acre headright certificate issued in 1845 in Austin county. A jury was waived. The other facts are stated in the Opinion.

*Crockett & Guess*, for appellant, cited 13 Tex. R. 220; 2 Id. 148; 4 Id. 438; 10 Id. 367; 1 Am. Ch. Dig. 644; 3 Bibb, 342; 7 Tex. R. 240; 2 Lead. Cas. in Eq. 468 and 17; 2 Cond. R. 255.

*J. W. Ferris*, for appellee. I. The judgment is not contrary to the evidence, because there was no valid outstanding title proved. The outstanding title must be existing and valid. (Perry v. Rice, 10 Tex. R. 373; Tarpley v. Poag, 2 Id. 148.) It was proved that appellee settled on the land as a colonist of Peters' colony in 1846, and remained there until March, 1855, after the sale to appellant. It is admitted, and the title-bond shows, that it was surveyed for appellee by virtue of his colony certificate. The survey for Horatio Woodward was made on "the 5th day of January, 1847," by virtue of his headright certificate, issued by the Republic of Texas, as appears from the field-notes in evidence. It was made after the settlement by Bradford as a colonist of Peters' colony, and when the land was reserved for the colony. The colonization contract with Peters' company did not expire until July 1st, 1848, and the Woodward survey was therefore void. (Stewart v. Crosby, 15 Tex. R. 548.) The outstanding title is not therefore valid; and the Woodward patent was evidently issued through oversight in the commissioner, and by not observing that Bradford claimed by the colony surveys.

II. The note of appellant was payable on a day certain; the bond of appellee was to execute to Taul "a legal and *bona fide* deed, within a reasonable time and without unnecessary delay, after a patent may be obtained from the State of Texas." Taul well knew, and was fully informed, that there were surveys conflicting with this, and difficulties in the way of getting a patent at an early period; and with this information he executes his note payable on a day certain, and takes the bond for title. It is no defence, where a party had a knowledge of the defects and relied on the covenants of warranty for redress. (Jones v. Taylor, 7 Tex. R. 244; 6 Page, R. 407; Van Lew v. Parr, Rich. Eq. R. 322.)

Taul v. Bradford.

It is well known that long and continued difficulties existed between the colonists of Peters' colony and the company, and that patents were not issued in the colony until within a short time since. No colonist would have sold his land and waited for his pay until he obtained his patent; for he was ever met on the part of the General Land Office by innumerable excuses and reasons for suspension. Bradford, therefore, contracted to be paid on a day certain, and was to make title after the patent may be obtained. Can 'Taul now change the contract, and keep both land and purchase money?

There is no proof that Bradford is insolvent, nor would Taul swear to the answer which charged insolvency. There should be some evidence of insolvency and inability to comply with the bond before asking for an injunction.

HEMPHILL, CH. J. The object of this suit is to recover the amount of a note given for the balance due of the purchase money of a tract of land. A portion of the purchase money was paid at the execution of the contract of sale; the vendee, Taul, giving this note for the remainder; dated April 20th, 1854, and due the 25th Nov. 1854; the vendor giving a bond, of same date, acknowledging the receipt of the whole of the purchase money, and agreeing to give up possession on the 25th November, and to make a legal and *bona fide* deed to the land within a reasonable time and without any unnecessary delay after obtaining a patent from the State. Suit commenced March 15th, 1855. The defence in substance is, that the plaintiff has not made, nor is he able to make, a good title for a large amount of the land, the same having been granted by patent to one Horatio Woodward; and also that there are other conflicting locations; that the plaintiff is taking no steps to remove these clouds, or to procure a patent, &c. &c.

Two surveyors testified that the Woodward survey conflicted with the section sold by plaintiff to defendant, to the amount of one hundred and fifty acres.

There was judgment for the plaintiff, for the amount of the note.

As a general rule, it may be sound law, that a covenant on the part of the vendee, to pay the purchase money at a particular date, and of the vendor to convey at some indefinite period, as, for instance, after a patent is obtained from the Government,

are not dependent upon each other, and that the purchaser must pay the money when due, and rely upon the covenant of the agreement for his remedy. But can this be the rule where it manifestly appears that there is a valid, outstanding title, superior to the claim of the vendor, or which, as long as it is permitted to stand, would prevent the vendor from procuring a patent for his land, and deprive him of the power to convey according to the conditions of his bond? This would involve that circuity of action and multiplicity of suits, so much discountenanced by our laws, and so repugnant to the genuine and fundamental principles of our system of procedure.

The defendant sets up a conflict by patent, issued after the date of his purchase, to one Woodward. The patent was issued in June—the purchase by defendant being in April, 1854; and it materially varied the condition of things as existing at the time of the contract of sale. At that time both plaintiff and Woodward had but surveys, the first on a colony and the latter on an ordinary headright certificate; and the defendant might have reasonably supposed that his vendor had at least a fair chance of procuring the patent, and that this might be obtained long before the note became due. As Woodward is not a party to the suit, I shall make no allusion which might be construed into an opinion on the validity of his title, except that if the field-notes of the plaintiff had been first presented for patent, there is great probability that the application would have succeeded. There is no allegation that the defendant had knowledge of the conflicts or clouds upon the title at the time of his purchase. There is evidence to that effect, but there are no averments which would authorize the introduction of such proof. The case stands on its allegations, as if the plaintiff had at the time of the contract, no knowledge of the difficulties about the title. The vendee in an executory contract may set up the defects of title as a defence against the recovery of the purchase money, and is not bound to allege his ignorance of these defects at the time of the sale. It is for the plaintiff to reply and prove notice of the condition of the title by the defendant.

The plaintiff has shown no diligence in attempting to procure a cancellation of the patent to Woodward. From the evidence it seems that the plaintiff did not make any effort to procure a patent, until about eighteen months after the sale, and that after that time he attempted a compromise with Woodward, which failed, and that at the time of the judgment in this case, about

three years after the patent to Woodward, the plaintiff had employed some one to institute a suit to set aside the patent.

This shows laches on the part of the plaintiff, and such dilatoriness as to place him in default.

It is ordered, adjudged and decreed that the judgment be affirmed; and it is further ordered, adjudged and decreed that execution be stayed on said judgment and the collection of the same enjoined, until the plaintiff procure a patent from the Government, and execute a deed with covenants of general warranty to defendant or until the plaintiff be otherwise enabled to make a valid *bona fide* conveyance with covenants of warranty to be judged of by the District Court, and that the District Court may make such orders, if any be necessary, as will secure the payment of the money at the execution of the conveyance.

Judgment reformed.